IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────

SHARIF HAMZAH,

                        Plaintiff,                      OPINION & ORDER

  v.

                                            13-cv-491-wmc

WOODMANS FOOD MARKET INC.,

                        Defendant.
───────────────────────────────────────────────────────

      In this proposed civil action, plaintiff Sharif Hamzah alleges that defendant Woodmans Food Market Inc. ("Woodman's") violated his rights under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, by (1) discriminating against him on the basis of his heterosexuality, age and ethnicity; and (2) retaliating against him by firing him due to internal complaints he filed alleging abuse. Hamzah asks for leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915. From the financial affidavit Hamzah has provided, the court concludes that he is unable to prepay the fee for filing this lawsuit. The next step is determining whether Hamzah's proposed action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

      Because Title VII and the ADEA do not cover such conduct, the court will dismiss plaintiff's claim that Woodman's discriminated against him on the basis of his sexual orientation. Because he provides insufficient facts in support of those claims to meet the requirements of Federal Rule of Civil Procedure 8, the court will also deny plaintiff's request for leave to proceed with his other claims at this time. Plaintiff will have the opportunity to

amend his complaint to remedy those deficiencies. If there is any merit to his claim, he should also have little trouble getting a lawyer who specializes in Title VII claims to present him on a contingency or fee award basis.

## ALLEGATIONS OF FACT

In addressing a *pro se* litigant's pleadings, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For the purposes of this order, the court accepts the plaintiff's well-pled allegations as true and assumes the following facts:

Hamzah was employed at Woodman's West. While employed there, he claims members of staff harassed him on the basis of his heterosexuality. On one occasion, his supervisor, Gabe Ororo, allegedly told him following a confrontation that "this is a homo/bi thing" and that Hamzah "did not belong [there.]" In or about July 2011, Jacob Bemis, a Woodman's employee and outside supervisor, allegedly told him that because he was heterosexual, he would not be promoted and would ultimately be terminated, because "this is a gay thing" and "non-gays or –bisexuals aren't welcome for long here at Woodman's West." Hamzah further alleges that Woodman's routinely denies employment to heterosexuals and harasses them if hired so that they will not remain employed for long.

Additionally, Hamzah filed numerous written complaints about various forms of harassment by Woodman's staff. Store supervisor "Dale" warned him multiple times that if the complaints did not stop, Hamzah would be fired. When Hamzah said he would seek legal recourse if he was terminated for filing complaints, Dale told him it was "useless" to do so, because Woodman's "owns this town and every politician and judicial clerk in it." Hamzah was eventually terminated, in part for filing complaints alleging staff abuses.

Finally, both before and on the date of his termination, Jacob Bemis allegedly made remarks about Hamzah "not belonging to the right ethnic group" and "being too old to work" as parcel/card personnel. "Gabe A.," the inside supervisor on duty, also stated multiple times that Hamzah was too old to work at Woodman's and that he did not belong to the right ethnic group.[1] Gabe A. was the "primary instigator" of Hamzah's eventual termination.

Hamzah seeks damages of between one million and three million dollars for the alleged discrimination and wrongful termination under Title VII and the ADEA.[2]

OPINION

A complaint may be dismissed for failure to state a claim where the plaintiff alleges too little and thereby fails to meet the federal pleading standards found in Federal Rule of Civil Procedure 8. Rule 8(a) requires a "'short and plain statement of the claim' sufficient to notify the defendants of the allegations against them and enable them to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). The Supreme Court has held that to comply with Rule 8, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). On the other hand, a plaintiff may "plead himself out of court" by including allegations that

---

[1] It is not clear from Hamzah's pleadings whether "Gabe A." and "Gabe Ororo" are the same person.
[2] Hamzah included with his complaint his EEOC dismissal letter, dated April 25, 2013.

show he has no valid claim for relief. *Lekas v. Briley*, 405 F.3d 602, 613-14 (7th Cir. 2005) (citations omitted).

Here, Hamzah alleges that Woodman's discriminated against him due to his heterosexual orientation, his ethnicity and his age, in violation of Title VII and the ADEA. He also alleges that Woodman's retaliated against him for filing internal complaints about harassment, another ground for relief under Title VII. The court will address each of his claims separately.

**I. Harassment**

    **A. Based on Sexual Orientation**

First, Hamzah alleges he was harassed and discriminated against on the basis of his heterosexuality. Title VII states that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

42 U.S.C. § 2000e-2(a)(1). While Title VII expressly prohibit employers from harassing employees "because of [their] sex," *Hamner v. St. Vincent Hosp. & Health Care Ctr.*, 224 F.3d 701, 704 (7th Cir. 2000) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78-79 (1998)), the Seventh Circuit has held that "Congress intended the term 'sex' to mean 'biological male or biological female,' and not one's sexuality or sexual orientation." *Id.* "Therefore, harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII." *Id.* To the

4

extent that Hamzah claims harassment due to his heterosexuality -- that is, his sexual orientation, not his sex -- he cannot bring a Title VII claim against Woodman's for these alleged instances of harassment, and the court will dismiss that claim with prejudice.

### B. Based on Ethnicity

Hamzah also alleges discrimination based on his ethnic group. Specifically, he contends that during his employment at Woodman's, as well as on the date of his termination, Jacob Bemis, one of his supervisors, and Gabe A., another supervisor, "made remarks about [Hamzah] not belonging to the right ethnic group." (Compl. (dkt. #1) 3.) Hamzah does not appear to allege any adverse employment action taken against him because of his ethnicity; rather, he alleges that supervisors made discriminatory remarks against him based on his ethnicity, which would tend to support a claim for a hostile work environment under Title VII.[3]

Unlike sexual orientation, discrimination based on ethnicity *is* protected under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, ... or national origin"). This protection extends beyond economic or tangible discrimination and precludes "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Thus, an employer violates Title VII "[w]hen the workplace is

---

[3] Hamzah claims that Bemis made some of his remarks about Hamzah "not belonging to the right ethnic group" on his termination date but does not appear to allege he was terminated *because* of his ethnicity. If Hamzah intends to bring a claim under Title VII for *termination* based on his ethnicity, he should supplement his complaint accordingly.

permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)) (internal citation omitted).

To find a Title VII violation under this theory, (1) the victim must subjectively perceive the environment as abusive, *id.* at 21-22; and (2) the environment must also be "objectively hostile or abusive," *id.* at 21. Circumstances that bear on that determination may include:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 23.

Although Hamzah is not required to prove his case at the pleading stage, his complaint must satisfy Rule 8, which requires him to plead sufficient factual matter to state a claim for relief that is *plausible*, not merely *possible*. *See Iqbal*, 129 S. Ct. at 1949. Here, Hamzah alleges that two supervisors "made remarks about the plaintiff not belonging to the right ethnic group" and that this happened "on more than one occasion." (Compl. (dkt. #1) 3.) But the Supreme Court has made clear that the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal citation omitted) (omission in original). Hamzah has provided no details making it *plausible* that the conduct was "severe or pervasive enough to create an objectively hostile or abusive work

environment." *Id.* Thus, his complaint does not meet the requirements of Rule 8, and the court will dismiss this claim.

This dismissal is, however, without prejudice, meaning that if Hamzah still wishes to pursue his Title VII claim for discrimination based on his ethnicity, he may supplement his pleadings by April 14, 2014. Should he do so, the court will again conduct a screening of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2). His supplement should set forth additional information about the circumstances surrounding the alleged harassment to make plausible his claim for a hostile work environment. If Hamzah does not supplement his pleadings by this time, the court will assume he does not wish to pursue the claim and will dismiss it from the case.

**II. Age Discrimination**

Next, Hamzah alleges that during his employment at Woodman's and on the date of his termination, Bemis and Gabe said he was too old to work at Woodman's generally and specifically as "parcel/card personnel." The ADEA makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection extends only to employees who are at least 40 years old. 29 U.S.C. § 631(a).

Like his hostile work environment claim under Title VII, Hamzah's complaint contains insufficient information about his ADEA claim to comply with Rule 8. First, Hamzah has not alleged that he is at least 40 years of age, which is required for the ADEA to apply to him. Without this information, the court cannot draw the reasonable inference

7

that defendant is liable under the ADEA. Should Hamzah choose to replead, he should also allege enough facts for the court to determine the nature of his ADEA claim. For example, it is unclear whether Hamzah alleges that he was (1) denied a particular job (as "parcel/card personnel") due to his age, (2) terminated due to his age (since he was told "on" his termination date that he was too old to work at Woodman's), and/or (3) subjected to age-based harassment that constituted a hostile work environment. Without this additional information, the court cannot infer that Hamzah has a plausible claim for age discrimination under the ADEA.

While the court will, therefore, dismiss Hamzah's ADEA claim without prejudice, plaintiff may choose to supplement his ADEA claim with information concerning his age and the particular violations he is alleging by April 14, 2014. If Hamzah does not supplement his pleadings as to this claim by then, the court will assume he does not wish to pursue it.

**III. Retaliatory Discharge**

Finally, Hamzah claims he was terminated "in part" for filing complaints against Woodman's staff members based on "various forms of harassment by staff." Title VII "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation for complaining about the types of discrimination it prohibits." *Hamner*, 224 F.3d at 704. Still, a claim of retaliation requires the plaintiff to show that he: (1) opposed an unlawful employment practice under Title VII; (2) was the object of an adverse employment action; and (3) that the adverse employment action was caused by his opposition to the unlawful employment practice. *Id.* at 705 (citing *Cullom v. Brown*, 209

F.3d 1035, 1040 (7th Cir. 2000)). As above, plaintiff must also allege enough facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

      Here, Hamzah has alleged an adverse employment action -- termination -- and has alleged that his termination was due to the complaints he filed, but has not alleged that those complaints opposed a practice that is unlawful under Title VII and has not been specific as to other possible claims. Rather, he simply alleges that he filed internal complaints about "various forms of harassment." Particularly since Hamzah has specifically alleged some harassment based on sexual preference -- which is *not* prohibited by Title VII -- his broad claim of retaliation is not enough by itself to make his Title VII claim plausible. The court will, therefore, dismiss this claim without prejudice as well. As with his ADEA claim and his Title VII claim for ethnicity-based discrimination, plaintiff may supplement his allegations with additional information as to the complaints that he made and their contents by April 14, 2014. If he does not, the court will assume he does not wish to pursue a claim for retaliation and will dismiss it from the case.

## IV. Appointment of Counsel

      Hamzah has also moved for the appointment of counsel in this case. (Dkt. #4.) Because the court has not granted him leave to proceed on any claims, his motion is premature at best and will also be denied without prejudice. Should Hamzah remedy the violations in his pleadings and be granted leave to proceed on any of his claims, he may then renew his motion.

Hamzah should be aware that civil litigants have no constitutional or statutory right to the appointment of counsel. *E.g.*, *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). The court may, however, exercise its discretion in determining whether to recruit counsel *pro bono* to assist an eligible plaintiff who proceeds under the federal *in forma pauperis* statute. *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent an indigent civil litigant *pro bono publico*."); *Luttrell*, 129 F.3d at 936. Therefore, this court cannot appoint counsel for Hamzah, but it does have the discretion to recruit a volunteer.

Before deciding whether it is necessary to recruit counsel, a court must find that the plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful, or that he has been prevented from making such efforts. *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). This court generally requires such a plaintiff to provide the names and addresses of at least three attorneys whom he has asked to represent him and who have refused him. In this case in particular, there should be little need to recruit counsel since many lawyers will take Title VII and ADEA cases based on the promise of a statutory-fee award should plaintiff prevail.

Even if a plaintiff meets this threshold requirement, the court must determine "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Five factors to be addressed include: (1) the merits of the claim for relief; (2) the ability of plaintiff to investigate crucial facts unaided; (3) whether the nature of the evidence indicates the truth will more likely be exposed when both sides have counsel; (4) the indigent's capability to present the case; and (5) the

complexity of the legal issues involved. *Jackson*, 953 F.2d at 1072. Should Hamzah be granted leave to proceed on some of his claims and should he wish to renew his motion for appointment of counsel, he should keep these factors in mind in requesting volunteer counsel.

ORDER

IT IS ORDERED that:

1) plaintiff Sharif Hamzah is DENIED leave to proceed on his claim of discrimination based on his sexual orientation under Title VII, and that claim is DISMISSED with prejudice;

2) plaintiff's remaining claims are DISMISSED without prejudice for failure to state a claim on which relief may be granted;

3) plaintiff may have until April 14, 2014, to submit a supplement to his pleadings, consistent with this Opinion and Order;

4) If plaintiff submits a supplement, the court will then screen his remaining claims pursuant to 28 U.S.C. § 1915(e)(2);

5) If plaintiff fails to file a supplement, the court will dismiss his claims with prejudice and close this case; and

6) plaintiff's Motion for Appointment of Counsel (dkt. #4) is DENIED without prejudice subject to refiling.

Entered this 24th day of March, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge