IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHARIF HAMZAH,

                Plaintiff,                          OPINION AND ORDER

v.

                                                           13-cv-491-wmc

WOODMAN'S FOOD MARKET, INC.,

                Defendant.

---

In this civil action, plaintiff Sharif Hamzah asserted employment discrimination and retaliation claims under Title VII and the ADEA against defendant Woodman's Food Market, Inc. ("Woodman's"). The court granted summary judgment to defendant on all but one claim of plaintiff, that he was unlawfully terminated under Title VII on the basis of his race, color or ethnicity. Now before the court are defendant's motion for reconsideration (dkt. #63), as well as plaintiff's motion for leave to amend his complaint (dkt. #69). For the reasons explained below, the court will deny both motions.

BACKGROUND[1]

Plaintiff Sharif Hamzah, a Native/African American, was hired as a utility clerk by Woodman's West on September 2, 2008. Hamzah was ultimately supervised by Dale Martinson, who as the store manager was authorized to hire, fire, discipline and promote employees.

---

[1] A more detailed discussion of the facts of this case can be found in the court's opinion on summary judgment. (Dkt. #61.)

The employee handbook in effect during Hamzah's employment at Woodman's West explicitly set forth two categories of disciplinary violations. The first category, "Group 1" violations, includes insubordination to a supervisor and provides cause for immediate dismissal. The second, "Group 2" violations, are less serious and do not provide cause for termination unless an employee receives more than five during a twelve-month period. In addition to those two formal categories, the handbook also provides:

> No list of rules and regulations can cover every possible standard of behavior. You are expected to conduct yourself in a manner suitable for the safe and efficient operation of the store. The purpose of these rules and regulations is not to restrict the rights of anyone, but to define them and ensure cooperation. The following rules are by no means inclusive. They do include many of the infractions considered most serious. In addition, the company may impose disciplinary action including demotion, suspension and/or discharge for acts not listed in the work rules or in cases where the supervisor feels it is in the best interest of the company to demote, layoff or terminate the individual from the workplace.

(Decl. of Kristin Popp Ex. A (dkt. 38-1) at 7.)

Between December of 2008 and April of 2011, Hamzah received written notices for five Group 2 violations. He also received three notices for Group 1 violations, the last of which was issued on July 28, 2011. Martinson fired Hamzah that same day, basing his decision on the three Group 1 notices.

All three of these Group 1 violations were for insubordination, and all three were based on allegations made by his immediate supervisors Jacob Bemis or Gabriel Oruruo. The record on summary judgment does not disclose what lengths, if any, Martinson took

to investigate independently whether the Group 1 notices were justified apart from Bemis's or Oruruo's allegations. Hamzah asserts that Bemis and Oruruo lied about all of the incidents underlying the three Group 1 notices. On the day he was fired, Hamzah further alleges that Bemis remarked, "blacks don't work with whites while [I'm] on duty, because you don't belong with us," and that Oruruo said, "told you, you don't belong to the right ethnic group."

The court granted summary judgment to defendant on plaintiff's hostile work environment and retaliation claims but denied summary judgment to defendant on his claim for unlawful termination on the basis of race, color or ethnicity under Title VII. Specifically, the court denied summary judgment to defendant on plaintiff's unlawful termination claims because there remained "genuine issues or material fact as to whether Bemis and Oruruo had a discriminatory animus and supplied the basis for Martinson's decision to terminate Hamzah's employment." (Opinion & Order (dkt. #61) at 14.) If so, defendant could be held liable under Title VII based on the "cat's paw" theory of liability. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994) ("Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action.").

OPINION

I. Defendant's Motion for Reconsideration

Rule 54(b) motions for reconsideration are largely evaluated under the same standard as motions to alter or amend a judgment under Rule 59(e). *Woods v. Resnick*,

3

725 F. Supp. 2d 809, 827-28 (W.D. Wis. 2010) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). To prevail on a motion to alter or amend under Rule 59(e), the movant must present newly discovered evidence or establish a "manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Nor is reconsideration "an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Finally, disposition of a motion for reconsideration is entrusted to the district court's discretion. *Id.* (citing *Billups v. Methodist Hosp.*, 922 F.3d 1300, 1305 (7th Cir. 1991)).

Defendant contends that the court committed error by crediting Hamzah's assertions regarding discriminatory statements allegedly made by Bemis and Oruruo on the day of his firing, since Hamzah only supported those assertions by citing to his unverified complaint, something the court already addressed in its opinion and order on summary judgment. (Opinion & Order (dkt. #61) at 7 n.4.) As the court explained, Hamzah's assertions *were* sufficient to create a dispute of material fact since: (1) Hamzah was acting *pro se* at summary judgment; (2) Hamzah could testify to those statements at trial as made to him by a party opponent; and (3) even defendant treated those statements to be undisputed for summary judgment purposes. (*Id.*)

4

While defendant would now fault the court for crediting those statements as sufficient to withstand its motion for summary judgment, citing Federal Rule of Civil Procedure 56 and the court's pretrial conference order, the court simply disagrees. Leaving aside that defendant did not ripen this issue in its own briefing, the court's treatment of these statements is consistent with its past approach to *pro se* litigants.

Admittedly, it is somewhat puzzling that plaintiff (now with the benefit of *pro bono* counsel recruited with the court's assistance after summary judgment) did not simply file with his brief in opposition to defendant's motion, an affidavit formally averring to the statements defendant challenged. *See* Fed. R. Civ. P. 56(e)(1) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact[.]"). On the other hand, defendant could have sought leave to take plaintiff's deposition on these statements as well, and presumably did not do so because it would likely have underscored the need for a trial. This is confirmed by the complete copy of plaintiff's deposition, which defendant filed in some kind of attempt "to preserve its right to use Hamzah's deposition at trial," but in an "uncertified, unauthenticated [form that] should not be considered evidence for purposes of summary judgment." (Def.'s Reply Br. (dkt. #66-1) at 4.)[2] Hamzah testified under oath to each of the material facts supporting his unlawful termination claims. (Dep. of Sharif Hamzah (dkt. #60) at 73 (denying allegations underlying Group 1 notice); 76 (Oruruo told

---

[2] The court will grant defendant's motion for leave to file a reply brief in support of its motion for reconsideration (dkt. #66).

Hamzah that he did not belong to the right ethnic group on the day he was fired); 93 (denying allegations underlying Group 1 notice); 97-98 (Bemis told Hamzah that blacks don't work with whites on the day he was fired); 113 (denying allegations underlying Group 1 notice).) Since Rule 56 expressly authorizes the court to consider materials in the record other than those cited by the parties in resolving summary judgment, Fed. R. Civ. P. 56(c)(3), Hamzah's deposition testimony is confirmation that defendant's motion for summary judgment was appropriately denied.

Defendant also argues that it was error for the court to apply the cat's paw theory in deciding its possible liability, since "Hamzah did not produce any admissible evidence . . . that placed Woodman's description of the events that led to Hamzah's termination into dispute." (Def.'s Opening Br. (dkt. #64) at 10.) As best the court can tell -- since the facts otherwise support a cat's paw theory -- this is just the same argument regarding plaintiff's failure to aver to the statements in his complaint, and it is denied for the same reasons. Accordingly, defendant's motion for reconsideration will be denied.

**II. Motion for Leave to Amend Complaint**

Plaintiff moves separately for leave to amend his complaint to add a breach of contract claim under Fed. R. Civ. P. 15(a)(2), that "Hamzah has a legal basis to argue that Woodman's would breach his employment contract, if it discharged him when he did not commit any misconduct, and when Woodman's did not have a reasonable basis for believing he committed misconduct[.]" (Pl.'s Opening Br. (dkt. #70) at 2-3.) More specifically, plaintiff asserts that notwithstanding the provision of the employee handbook that permitted Martinson to fire Hamzah for any Group 1 violation for

6

insubordination, a breach of contract claim would not be futile because Martinson gave Hamzah an oral promise after receiving his second Group 1 notice that he would not be fired unless Woodman's "either received customer complaints, or it had a reasonable basis for believing that Hamzah again failed to follow directions from a supervisor[.]" As for the provision of the employee handbook that also authorized employees to be fired if it is in "the best interest of the company," plaintiff further contends that the implied duty of good faith and fair dealing prohibited termination when Woodman's lacked "a reasonable basis for believing that the employee had committed misconduct."

"Although [Rule 15(a)(2)] reflects a liberal attitude toward the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if . . . the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (citation omitted). A proposed pleading is futile, and the court should deny leave to amend, if "the amended claim would not survive a motion for summary judgment." *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).

Here, even assuming that plaintiff could establish that his claimed duty of good faith or last chance agreement somehow modified Hamzah's otherwise at-will employment contract with Woodman's, both of which defendant gives significant reason to doubt in its response to plaintiff's motion, amendment would be futile because no reasonable jury could find under the facts of this case that Martinson lacked, in plaintiff's own words, "a reasonable basis to believe that Hamzah again failed to follow directions from a supervisor[,]" unless it was because of a wholly fabricated account by Bemis or Oruruo, which Martinson could not have known.

7

Indeed, the court denied summary judgment on plaintiff's unlawful termination claims because there remain disputes of fact regarding: (1) whether Bemis and Oruruo had discriminatory animus; and (2) whether that animus proximately caused Hamzah's firing by supplying the information on which Martinson relied. However, there are *no* facts in the record to suggest that Martinson did not reasonably rely on Bemis and Oruruo's disciplinary notices in firing Hamzah, even if their allegations supporting those notices were false. Accordingly, under either breach of contract theory as framed by plaintiff, amendment would be futile because no reasonable jury could find that Martinson lacked a sufficient basis to fire Hamzah under the terms of his employment contract. For these reasons, the court will deny plaintiff's motion for leave to amend the complaint.

ORDER

IT IS ORDERED that:

1) Defendant's motion for leave to file a reply brief (dkt. #66) is GRANTED;

2) Defendant's motion for reconsideration (dkt. #63) is DENIED; and

2) Plaintiff's motion for leave to amend the complaint (dkt. #69) is DENIED.

Entered this 13th day of June, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
U.S. District Court Judge