IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHARIF HAMZAH,

                                Plaintiff,                       OPINION AND ORDER

    v.

                                                                13-cv-491-wmc

WOODMAN'S FOOD MARKET, INC.,

                              Defendant.

---

This matter is set for trial commencing with voir dire on Monday, October 17, 2016 at 9:00 AM and opening statements on Thursday, October 20, 2016 at 8:30 AM. In advance of today's final pretrial conference scheduled for August 2, 2016 at 4:00 PM, the court issues the following opinion and order on the parties' motions *in limine*.

OPINION

I.      PLAINTIFF'S MOTIONS *IN LIMINE*

**MIL No. 1:**   Preclude defendant from presenting evidence of any discipline that plaintiff received while employed by defendant, aside from the discipline he received on November 2, 2010; May 12, 2011; and July 28, 2011.

Plaintiff argues that because Dale Martinson, defendant's store manager, terminated plaintiff based only on the "Group 1" violations he had received on November 2, May 12, and July 28, defendant should be precluded from introducing evidence of other disciplinary violations issued against plaintiff. According to plaintiff, because Martinson testified at his deposition that he did not consider or rely on any

other violations, plaintiff's general disciplinary history would be improper character evidence, irrelevant and unfairly prejudicial.

Defendant agrees that it would be improper to introduce plaintiff's disciplinary history for the purpose of suggesting that plaintiff's termination was justified or that he likely engaged in the conduct that led to the November, May and July discipline. Defendant argues, however, that plaintiff's disciplinary history is relevant to the "cat's paw" theory plaintiff is pursuing in this case -- that his immediate supervisors Jacob Bemis and Gabe Oruruo intended to discriminate against him on the basis of his race and that *their* discriminatory actions were a causal factor in Martinson's decision to terminate him. (*See* Summary Judgment Opinion (dkt. #8) pp. 13-15); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (explaining elements of "cat's paw" discrimination theory). Defendant argues that plaintiff's prior discipline is relevant to rebut plaintiff's claim that Bemis and Oruruo were biased against him because of his race or ethnicity, as his prior discipline shows that Bemis and Oruruo had legitimate reasons to dislike working with him.

The court agrees with defendant, but only to the extent there is evidence that Bemis and Oruruo were involved in, or aware of and affected by, the prior disciplinary incidents. In particular, defendant may introduce evidence that Bemis and Oruruo were involved in prior incidents with plaintiff that resulted in his being disciplined, and how those incidents affected their perception of plaintiff's work performance. Such evidence would be relevant to rebut plaintiff's claim that Bemis and Oruruo's reports to Martinson were motivated by discriminatory animus, as such evidence would support defendant's

defense that Bemis and Oruruo were motivated by legitimate, non-discriminatory reasons. That being said, defendant may not introduce evidence of disciplinary violations if there is no evidence that Bemis and/or Oruruo were aware of the disciplinary violation, nor of the *specifics* of any particular violation unless they were aware of the underlying events, *at the time they reported concerns* about plaintiff to Martinson.

Plaintiff's proposed jury instructions and verdict form suggest that he may only be pursuing a theory that *Bemis* acted with discriminatory intent, not Oruruo. If that is the case, then the only disciplinary incidents that would be relevant would be incidents in which *Bemis* was involved, or about which he was aware at the time he complained about plaintiff to Martinson. **Plaintiff should be prepared to clarify at the final pretrial conference whether he still intends to argue that Oruruo held discriminatory animus.**

Defendant may also refer to plaintiff's disciplinary history for impeachment purposes. For example, plaintiff suggested at his deposition at one point that he was a "model employee." (Dkt. #60 at 62). If plaintiff offers evidence at trial, or otherwise suggests that Hamzah had few or no disciplinary problems at Woodman's, defendant may question plaintiff about his full disciplinary history to impeach his testimony.

Accordingly, this motion is GRANTED IN PART and DENIED IN PART. Defendant may introduce evidence of plaintiff's various disciplinary violations: (1) to rebut the claim that Bemis or Oruruo were motivated by discriminatory animus; and (2) for impeachment purposes should plaintiff open the door as to the quality of his job performance generally. Regardless, defendant may not argue that plaintiff's prior

3

disciplinary violations made it more likely that he committed the infractions that Martinson relied on when terminating him.

**MIL No. 2: Preclude defendant from presenting "after acquired" evidence of plaintiff's misconduct in the presence of the jury.**

Plaintiff argues that defendant should be prohibited from introducing evidence that after he was fired, he said to his supervisor: "I should stab you, but I'm too smart for that." Plaintiff argues that such evidence is irrelevant to the liability phase, and that during the damages phase, it would be relevant only to issues that must be decided by the court. In response, defendant agrees that this statement should not be introduced during the liability phase of trial, and makes no argument as to the possible relevance of the statement during the damages stage. Nor is the court aware of any arguable relevance.

While "after-acquired evidence" may be used to limit a plaintiff's available remedies in an employment case, provided the defendant can show that "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge," *McKennon v. Nashville Banner Publication Co.*, 513 U.S. 352, 362-63 (1995), that is not a jury question. *Sellers v. Mineta*, 358 F.3d 1058, 1065, 1068 (8th Cir. 2004) (explaining that court should conduct fact finding on this issue). Because this is a Title VII case, the only remedy issue to be decided *by the jury* is compensatory damages, and defendant has not argued that any after-acquired evidence would be relevant to compensatory damages. *See*

*Franzen v. Ellis Corp.*, 543 F.3d 420, 425 (7th Cir. 2008) (back pay and front pay are *equitable* remedies in Title VII cases).  Accordingly, this motion will be GRANTED.

**MIL No. 3: Bar defendant from presenting any witnesses at trial, aside from Dale Martinson, Kristin Popp, Gabe Oruruo, Jacob Bemis and Sharif Hamzah.**

This motion will be GRANTED as unopposed.

## II.   DEFENDANT'S MOTIONS *IN LIMINE*

**MIL No. 1: Preclude plaintiff from introducing evidence concerning his homelessness, financial circumstances, personal circumstances following his discharge or the comparative wealth of defendant's and plaintiff at any time during the liability phase of trial.**

Defendant moves to preclude plaintiff from introducing evidence during the liability phase of trial that he was unemployed or homeless following his termination, on the grounds that these facts are irrelevant to plaintiff's discrimination claim and would be unduly prejudicial.  Additionally, defendant moves to preclude plaintiff from introducing evidence or making arguments regarding the relative wealth of the parties.

Plaintiff makes no argument as to the relevance of the defendants' wealth to any issue in this case, nor could he since punitive damages are unavailable.  As a result, plaintiff will be precluded from introducing evidence of the defendant's or plaintiff's wealth or for that matter the parties' relative wealth.

With respect to plaintiff's homelessness and/or unemployment, plaintiff argues that this evidence may be relevant to explain why his testimony during his deposition contradicts statements he will make at trial.  Specifically, plaintiff claims that because of

5

his homelessness, he was staying with a friend and only got 1-2 hours of sleep the night before the deposition. This is not sufficient reason to permit plaintiff to testify regarding his homelessness.

To the extent plaintiff gave a materially *false* testimony at his deposition, plaintiff's counsel should consider his ethical duty of candor to opposing counsel and the court, rather than spring them at trial. Of course, even if this ethical obligation has been discharged, a party may testify in a manner that is arguably confusing or contradicts his deposition testimony. Fed. R. Civ. P. 26(e), Advisory Committee Note. If impeached for doing so, he may *briefly* explain that sleep deprivation may have contributed to this, since he was operating on only 1-2 hours of sleep at the time as a result of his living at a friend's house that he generally could not access until 2:00 a.m. However, he may *not* elaborate further as to his homelessness generally; nor may he discuss his unemployed status during the liability phase of trial. Accordingly, defendants' motion will be GRANTED IN PART and DENIED IN PART.

**MIL No. 2:   Preclude plaintiff from referring to the progressive discipline policy in Woodman's General Policies Manual as "mandatory."**

Defendant moves to preclude plaintiff from arguing that defendant was *required* to follow the progressive discipline policy in the employee manual before terminating him. This motion will be GRANTED.

Plaintiff may argue that a failure by Bemis or Oruruo to follow guidelines of the employee manual is evidence of their discriminatory intent, as well as that Martinson's failure to follow the progressive discipline policy is evidence his termination decision was

6

based solely on information provided by Bemis and Oruruo. Plaintiff may not, however, argue that Martinson was *required* by the Title VII, other law or the manual itself to conduct any investigation or follow certain progressive disciplinary steps.

Plaintiff cites no legal authority, nor any language from the manual itself, that would support such an argument. Moreover, that argument would be certain to confuse the jury, by causing it to conclude incorrectly that defendant is liable under Title VII simply for failing to comply with certain provisions of the employee manual.

As the court has explained multiple times, plaintiff may not proceed on a breach of contract claim in this case. Plaintiff plead and may only proceed on a Title VII discrimination claim that his termination was motivated by discriminatory animus, not for failure to follow its employee manual.

**MIL No. 3:   Preclude plaintiff from testifying that an unidentified declarant informed him that he did not need to list criminal convictions that occurred more than 10 years ago on his employment application.**

Plaintiff testified at his deposition that the reason he marked "no" in response to the question on his employment application concerning whether he had ever been convicted of anything other than a minor traffic violation was because someone at Woodman's told him that it would only look at convictions in the past 10 years. Defendant has moved to preclude plaintiff's explanation on the grounds that the statement by the unidentified person (apparently a Woodman's employee) is hearsay. The motion will be DENIED, however, because the statement is *not* being offered to prove the truth of the matter asserted. Plaintiff does not intend to rely on the statement for the purpose of establishing that defendant, in fact, is not concerned with criminal

convictions more than 10 years old. Instead, plaintiff would rely on the statement to explain his own state of mind and an explanation for his actions. Accordingly, the statement is not hearsay, nor will it not be excluded on that basis.

**MIL No. 4:   Permit defendant to cross-examine plaintiff concerning his failure to disclose criminal convictions on his employment application.**

Defendant moves under Fed. R. Evid. 608(b) for an order permitting it to cross-examine plaintiff regarding his failure to disclose his criminal convictions on his employment application. Defendant argues that this evidence is probative of plaintiff's character for truthfulness or untruthfulness. In response, plaintiff does not object to limited cross-examination regarding his employment application. Plaintiff objects under Rule 609(a) and (b), however, to any discussion of the criminal convictions that he omitted on the application that were not felonies and/or are more than 10 years old and are not probative of plaintiff's truthfulness.

Defendant's motion will be GRANTED, with limitations. Defendant may *briefly* cross-examine plaintiff regarding his failure to disclose criminal convictions on his employment application. Specifically, defendant may ask plaintiff whether he omitted any convictions and the number of convictions he omitted. Defendant may not, however, seek to elicit *any* details regarding any of the criminal convictions, including their formal names or descriptions, unless plaintiff denies omitting some or all of htem, and then only to impeach.

**MIL No. 5:   Preclude plaintiff from introducing Jacob Bemis's criminal convictions and employment application into evidence.**

Defendant moves to preclude plaintiff from introducing evidence regarding Bemis's criminal convictions for disorderly conduct, on the grounds that the convictions are irrelevant to Bemis's character for truthfulness or untruthfulness. Defendant concedes that plaintiff should be permitted to cross-examine Bemis regarding his failure to disclose one of his disorderly conduct convictions on his employment application, but argues that plaintiff should be precluded from introducing Bemis's employment application, or evidence of the conviction itself, into evidence.

This motion will be GRANTED, again with clarification. Plaintiff may not refer to Bemis's 2010 conviction at all, as it is irrelevant to his character for truthfulness or untruthfulness because it occurred after he completed his employment application. Plaintiff may briefly cross-examine Bemis regarding his failure to disclose a 2003 criminal conviction on his employment application, but may not seek to elicit details regarding the conviction itself. Additionally, although plaintiff may refer to Bemis's employment application, or evidence of his 2003 criminal conviction, to refresh Bemis's recollection or impeach him with prior inconsistent statements, as appropriate, such evidence will not be admitted as exhibits to be provided to the jury.

**MIL No. 6:   Preclude plaintiff from cross-examining Jacob Bemis concerning his disciplinary file, or otherwise referring to or seeking to introduce evidence from Bemis's disciplinary file.**

Defendant moves to preclude plaintiff from introducing any evidence regarding Bemis's disciplinary file on the grounds that it would be irrelevant, unfairly prejudicial

9

and would confuse or mislead the jury. In particular, defendant identifies three specific instances in Bemis's file for exclusion: (1) Bemis's discipline for an inappropriate remark to a pregnant customer; (2) Bemis's attendance record; and (3) Bemis's termination for soliciting and accepting tips from customers for his own personal use.

Plaintiff makes no argument as to how the evidence in categories 1 and 2 would be relevant to his cats paw discrimination claim, so they will be excluded. With respect to the evidence relating to Bemis's termination, however, plaintiff argues that the evidence should be admissible to show: (1) Bemis's motive to lie to Martinson about plaintiff's job performance; and (2) Bemis's character for truthfulness or untruthfulness.

This motion will be GRANTED IN PART and DENIED IN PART. The court will exclude evidence relating to (1) Bemis's inappropriate remark to a pregnant customer; and (2) his attendance. In each instance, this evidence is irrelevant to plaintiff's discrimination claim. The court will, however, permit plaintiff to cross-examine Bemis regarding his termination for acceptance and solicitation of tips from customers in accordance with Rule 608(b). The court agrees with plaintiff that Bemis's solicitation and acceptance of tips from customers for his own personal use -- contrary to defendant's policies that characterize any customer tip as belonging to the company -- is at least arguably probative of his character for truthfulness and untruthfulness.

Thus, plaintiff may ask Bemis questions about the grounds for his termination, as well as whether Bemis admitted or denied accepting a customer tip when accused. In accordance with Rule 608(b)(2), however, plaintiff may only cross-examine Martinson regarding the circumstances of Bemis's termination *if Martinson or other witness opens the*

10

*door* by testifying about Bemis's character. Plaintiff will not be permitted to introduce to the jury any documentary evidence from Bemis's disciplinary file or refer to specific documents, except to refresh a witness's recollection, for proper impeachment or for a prior inconsistent statement.

**MIL No. 7: Preclude plaintiff from referring to "video footage" of July 28, 2011.**

Plaintiff intends to argue that Martinson could have, but did not, review video tape evidence regarding the incident that formed the basis of the July 28, 2011, Group 1 violation, which proceeded plaintiff's termination. Defendant argues that any reference to video footage should be precluded because plaintiff has no proof (1) that this video tape evidence ever existed; or (2) what the video would have shown even if it did exist. In response, plaintiff argues that he should be permitted to question Martinson about the potential video, because Martinson conceded at his deposition that there is a video camera that covers the parcel area and would have likely shown the incident.

The motion will be DENIED, but plaintiff's questions regarding video footage will be limited. If plaintiff is able to lay a foundation as to his knowledge of both the video's existence, and field of view, then plaintiff may engage in *limited* questions of Martinson regarding: (1) whether a camera covered the area of the incident; and (2) whether he reviewed the video footage before issuing the Group 1 violation and terminating plaintiff's employment. This evidence is relevant to plaintiff's cat's paw theory, as plaintiff must not only prove that Bemis or Oruruo had discriminatory animus, but that their discriminatory animus -- and not some legitimate reason -- motivated Martinson's termination of plaintiff.

11

Defendant can obviously rebut plaintiff's cat's paw theory in part by showing that Martinson investigated plaintiff's alleged misconduct and decided -- independent of Bemis's or Oruruo's report and recommendation -- that plaintiff's termination was entirely justified. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) ("[I]f the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . . then the employer will not be liable."). Thus, plaintiff should be permitted to question Martinson about the extent to which he investigated the allegations against plaintiff before he was terminated. Plaintiff *may not*, however, suggest that Martinson was *required* to review the video footage, nor suggest or argue to the jury that because Martinson failed to review the video footage, the footage likely supported plaintiff's version of events.

**MIL No. 8: Preclude plaintiff from introducing into evidence or referring to any document, witness, or information that was not disclosed prior to the close of discovery.**

Defendant has moved to preclude plaintiff from relying on any witnesses or documents not disclosed before the close of discovery. Plaintiff responds that he does not intend to call any undisclosed witnesses, but that he *may* supplement his discovery responses with documents for which he is still searching. In particular, plaintiff says that at the time discovery closed, he was still searching for documents relating to damages, including rejection letters from employment applications, tax returns and a letter showing the payout he received from defendant's employee stock ownership plan. He states that as soon as he gathers these documents, he will provide them to defendant.

The motion will be GRANTED IN PART and DENIED IN PART. The motion will certainly be granted with respect to the issue of undisclosed witnesses. With respect to documents, the court will deny defendant's broad motion to preclude any documents undisclosed at this point. If plaintiff has since provided defendant with additional documents to which defendant objects, defendant may raise an objection either by motion or during the final pretrial conference regarding the specific document, explaining how it has been prejudiced by the untimely disclosure. The court will then consider whether that document should be excluded in accordance with Fed. R. Civ. P. 37(c). Of course, plaintiff is highly unlikely to be allowed to introduce *any* material that he has not yet produced or otherwise made known to defendants consistent with his obligations under Fed. R. Civ. P. 26(a), 34 and 26(e)(1)(A).

## ORDER

IT IS ORDERED that:

1. Plaintiff's motions *in limine* (dkt. #90) are resolved as follows:

    - Motion *in limine* no. 1 is GRANTED IN PART and DENIED IN PART, as explained above, and plaintiff should be prepared to clarify at the final pretrial conference whether he still intends to argue that Oruruo held discriminatory animus.

    - Motion *in limine* no. 2 is GRANTED.

    - Motion *in limine* no. 3 is GRANTED.

2. Defendant's motions *in limine* (dkt. #96) are resolved as follows:

    - Motion *in limine* no. 1 is GRANTED IN PART and DENIED IN PART, as explained above.

    - Motion *in limine* no. 2 is GRANTED.

- Motion *in limine* no. 3 is DENIED.

- Motion *in limine* no. 4 is GRANTED, with limitations explained above.

- Motion *in limine* no. 5 is GRANTED, with clarification provided above.

- Motion *in limine* no. 6 is GRANTED IN PART and DENIED IN PART, as explained above.

- Motion *in limine* no. 7 is DENIED, with limitations provided above.

- Motion *in limine* no. 8 is GRANTED IN PART and DENIED IN PART, as explained above.

Entered this 12th day of October, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge